**KNIGHT RIDERS OF THE KU KLUX KLAN, et al., Plaintiffs–Appellees,**

v.

**CITY OF CINCINNATI, Defendant– Appellant (94–4055),**

**Homeless Hotline of Greater Cincinnati, Defendant–Intervenor (94–4055), Defendant-Intervenor-Appellant (94–4056).**

Nos. 94–4055, 94–4056.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1995.

Decided Dec. 26, 1995.

---

Scott T. Greenwood (argued and briefed), Greenwood & Hudson, Cincinnati, OH, for plaintiffs-appellees.

Richard Ganulin (argued and briefed), City Solicitor's Office for City fo Cincinnati, Cincinnati, OH, for defendant-appellant.

Wilton E. Blake, II (briefed), Dinsmore & Shohl, Cincinnati, OH, for intervenor-appellant.

Before: LIVELY, KENNEDY, and RYAN, Circuit Judges.

KENNEDY, Circuit Judge.

Defendants appeal a judgment of the District Court finding a City of Cincinnati ordinance to be an impermissible content-based restriction on the exercise of First Amendment rights and enjoining the City from denying plaintiffs a permit to erect a cross on a public forum. For the following reasons we AFFIRM.

## I.

On November 17, 1993, plaintiffs, Knight Riders of the Ku Klux Klan, applied to the City of Cincinnati ("City") for a permit to display a free-standing "Christian Cross" bearing the words "John 3:16"[1] in Fountain

---

1. This passage from the New Testament reads: "[F]or God so loved the world that he gave his only Son so that anyone who believes in Him shall not perish, but have everlasting life." Only

Square for ten days beginning on December 19. On December 2, the city public works director, charged with the responsibility of processing permit applications, denied plaintiffs' application pursuant to § 713–2(b) of the Cincinnati Municipal Code. That section states:

> No person may communicate on Fountain Square any obscenity, defamation, or "fighting words" including, but not limited to, a symbol, object, appellation, characterization, oral communication, or graffiti which injures a person or group of persons or is likely to cause an immediate act of violence by the listener or observer.
>
> A permit for the special use of Fountain Square shall be denied or revoked where it is apparent that a proposed event, display, exhibit or structure will violate the prohibition of obscenity, defamation or "fighting words."

Plaintiffs appealed this decision to the city manager's office and, after a hearing, the decision to deny plaintiffs' permit was upheld on the grounds that plaintiffs' proposed cross constituted injurious "fighting words."

On December 14, 1993, plaintiffs filed this action seeking a preliminary injunction to enjoin the City from applying § 713–2(b) on grounds that it violated the First Amendment. Plaintiffs prevailed, and the District Court ordered the City to grant the permit. *Knight Riders of the Ku Klux Klan v. City of Cincinnati*, 847 F.Supp. 85 (S.D.Ohio 1993). Plaintiffs then erected the cross in accordance with the permit. On December 21, the Homeless Hotline of Greater Cincinnati was permitted to intervene as a defendant. It immediately filed a motion for preliminary injunction, seeking to enjoin the continued display of the cross. The District Court denied the motion. Plaintiffs' cross stood in Fountain Square for the duration of its permit period.

The parties filed cross-motions for summary judgment and on August 31, 1994, the District Court granted plaintiffs a permanent injunction preventing the City from denying them or others similarly situated a permit to erect a cross on the Square. *Knight Riders of the Ku Klux Klan v. City of Cincinnati*, 863 F.Supp. 587 (S.D.Ohio 1994). Defendants now appeal this decision.

## II.

The City argues that the cross, because it is sponsored by the plaintiffs, injures the reasonably informed observer and tends to incite an immediate breach of the peace. The intervenor argues that summary judgment was inappropriate because there are genuine issues of material fact as to the exact nature of the speech communicated by the cross, the potential for immediate breach of the peace it creates, and whether sufficient injury is inflicted by the cross for it to constitute fighting words. The intervenor also argues that this court should uphold the ordinance as a content-based prohibition on oppressive and subordinating speech.

Plaintiffs respond that, as a matter of law, a free-standing Latin cross bearing the words "John 3:16" does not constitute fighting words, and that the ordinance is thus an unconstitutional content-based restriction on speech.

The District Court held that the cross did not constitute fighting words and ordered that plaintiffs be granted a permit to erect their cross.[2] We review this decision *de novo, Pinette v. Capitol Square Review and Advisory Bd.*, 30 F.3d 675, 677 (6th Cir.1994), *aff'd*, —— U.S. ——, 115 S.Ct. 2440, 132 L.Ed.2d 650 (1995), and now affirm.

## III.

It is well established that Fountain Square is a traditional public forum. *Con-*

---

the citation to "John 3:16," and not the text, was to appear on the cross.

**2.** The District Court also struck down § 713 as an unconstitutional prior restraint on speech because it lacked the necessary procedural safeguards. However, on September 28, 1994, the City Council amended the City Code to require prompt judicial review of an intended denial of a permit on the grounds that the message sought to be communicated was defamatory, obscene, or "fighting words." Cincinnati Municipal Code § 713–1(h). Thus, the issue of whether the pre-amendment § 713 procedural deficiency was an unconstitutional prior restraint is now moot. We vacate that portion of the District Court's decision.

*gregation Lubavitch v. City of Cincinnati,* 997 F.2d 1160, 1161 (6th Cir.1993). Therefore, the City's regulation of speech on Fountain Square is subject to the highest level of scrutiny. *Capitol Square Review and Advisory Bd. v. Pinette,* —— U.S. ——, ——, 115 S.Ct. 2440, 2446, 132 L.Ed.2d 650 (1995). However, if the speech sought to be regulated is fighting words, it is unprotected by the First Amendment and hence regulable by the City. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). Thus, the question here is whether a cross erected by the Knight Riders of the Ku Klux Klan, bearing the words "John 3:16," constitutes fighting words such that preventing its display in a public forum would not violate the First Amendment. We hold that the cross is not fighting words.

▇ Fighting words is a small class of expressive conduct that is likely to provoke the average person to retaliate, and thereby cause a breach of the peace. *Chaplinsky,* 315 U.S. at 574, 62 S.Ct. at 770; *Texas v. Johnson,* 491 U.S. 397, 409, 109 S.Ct. 2533, 2542, 105 L.Ed.2d 342 (1989). In other words, if a reasonable onlooker would regard the expressive conduct "as a direct personal insult or an invitation to exchange fisticuffs," it is not entitled to First Amendment protection. *Johnson,* 491 U.S. at 409, 109 S.Ct. at 2542 (citations omitted). In determining whether plaintiffs' cross constitutes fighting words, we are required to consider carefully the actual circumstances surrounding its display and ask whether "the expression 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" *Id.* (quoting *Branden-*

*burg v. Ohio,* 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430 (1969)).

Plaintiffs' cross does not fit within the Supreme Court's narrow definition of fighting words and thus may not be regulated as such by the City.[3] The cross is a general symbol, broadcast to the public at large. Here it is proffered as a Christian symbol displayed in celebration of Christmas. *But see Capitol Square Review Board and Advisory Bd. v. Pinette,* —— U.S. ——, ——, 115 S.Ct. 2440, 2450, 132 L.Ed.2d 650 (1995) (Thomas, J., concurring). The cross on display in Fountain Square cannot be said to be aimed at any single person or group of people, and hence could not be construed "as a direct personal insult or an invitation to exchange fisticuffs." *See Johnson,* 491 U.S. at 409, 109 S.Ct. at 2542 (citations omitted).

▇ Nor does display of the cross in Fountain Square prompt a breach of the peace. Defendants do not argue, nor could they, that the cross itself would elicit a violent response. Their argument is that plaintiffs' sponsorship of the cross, indicated by the permit application and a sign accompanying the cross,[4] makes such action imminent. We disagree. Aside from the sign, the cross stands alone, and is unattended by any members of the Knight Riders of the Ku Klux Klan. Further, the only writing that appears on the cross is the New Testament reference, "John 3:16." Given the circumstances of its display, the message expressed by the cross—be it one of good or evil—is too vague and general to be found likely to incite or produce imminent lawless action in the form of retaliation or breach of the peace.[5] Ac-

3. Indeed, this court is aware of only one case, *Chaplinsky* itself, where the Supreme Court has upheld a restriction on speech as fighting words.

4. City rules provide that "All permitted displays, exhibits or structures shall be accompanied by a sign indicating ownership or sponsorship, and that the display, exhibit or structure is not supported or paid for with public funds. The sign must be legible from at least ten feet in distance." The record does not contain the exact text of the sign accompanying plaintiffs' cross.

5. We are mindful of the fact that twenty-four persons were arrested in 1992 for attempting to knock down the unattended Klan-sponsored cross on Fountain Square. Nevertheless, we

agree with the District Court that the lawless acts of a few are insufficient, under these circumstances, to warrant the suppression of nonviolent expressive conduct as fighting words. *Knight Riders of the Ku Klux Klan v. City of Cincinnati,* 863 F.Supp. at 590; *see Johnson,* 491 U.S. at 409, 109 S.Ct. at 2542 ("It would be odd indeed to conclude *both* that if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection, *and* that the government may ban the expression of certain disagreeable ideas on the unsupported presumption that their very disagreeableness will provoke violence.") (citations omitted) (quotations omitted) (emphasis in original).

cordingly, we agree with the District Court that plaintiffs' cross does not constitute fighting words.

■ We need only briefly address the arguments of the intervening defendant, the Homeless Hotline of Greater Cincinnati. First, we reject the argument that summary judgment was inappropriate because of the existence of genuine issues of material fact. The parties, including the intervenor, submitted the case to the District Court upon a joint stipulation of facts and agreed that the material facts were not in dispute and that the case was appropriate for summary disposition in accordance with Federal Rule of Civil Procedure 52. *Knight Riders of the Ku Klux Klan,* 863 F.Supp. at 588. The Homeless Hotline cannot now collaterally attack this stipulation.

Finally, since there is no violation of the ordinance, we do not address its constitutionality, and we do not consider the intervening defendant's invitation to forge new First Amendment law by upholding the ordinance as a valid explicit content-based prohibition on oppressive and subordinating speech.

## IV.

For the foregoing reasons, the decision of the District Court holding that the cross does not constitute fighting words is hereby AFFIRMED. Because § 713 of the Cincinnati Municipal Code was amended, the decision of the District Court holding it to be an unconstitutional prior restraint is moot and that portion of the District Court's judgment is VACATED.

